My name is Leslie Prince. I'm the attorney for the appellant, Troy Smith. And I would like to reserve three minutes for rebuttal. I'd like to start by emphasizing all the problems with Inspector Gardner's credibility and why George Turner's declaration is so essential to appellant's claims. The entire case turns on Inspector Gardner's testimony that the poster board and newspaper were at the scene on the day of the robbery. No one corroborates Inspector Gardner's testimony that he found the poster board on the day of the incident, April 7th. Inspector Gardner's partner, Inspector Layden, is never asked about the poster board or the newspaper at the trial. Inspector Ciahiro testified that he received the poster board from Inspector Gardner, but he doesn't say when he received it, which is a crucial point. There's no other witnesses or evidence that the poster board or the newspaper were at the scene on the day of the incident, April 7th. Counsel, even if we could get past due diligence, what basis is there for our deciding that this sort of naked declaration would ever be admissible in any court? Even if we were looking at more lenient standards for Federal court admissibility where there is the catch-all exception, the residual exception, I mean, what is there beside the possibility of a dying declaration, and how does it work? I mean, it doesn't seem to me that it qualifies. And if it's not a dying declaration, how do you get it in? Well, I think it qualifies under the residual hearsay exception. And I don't know whether or not the hearsay rule really is applicable to these proceedings. I mean, it's very typical in habeas-type cases to submit affidavits and declarations. So I don't know that it's really an issue in this case. If we were to get an evidentiary hearing, we could do some discovery, and we would be able to find other things that would corroborate what Turner is saying. For example, we could depose the prosecutor, Jerry Coleman. We could obtain prison records or other documents with Turner's signature to compare it to the signature on the declaration. We could attempt to verify D.A. Coleman's visits with George Turner at the jail. And we could subpoena the district attorney's file. So those are things that we could do if we had the opportunity to do discovery. So you agree it doesn't qualify as a dying declaration? I would agree with that because it's not concerning the cause and circumstances of death. But I do think it comes in under the residual hearsay exception of a federal rule of Evidence 807. And, you know, without pinning you, without taking issue with that for the moment, does it make any difference that there is no residual hearsay exception in California? Well, again, I think that if we were able to get an evidentiary hearing in the federal courts, we would be able to do more discovery and get things to corroborate what Turner is saying in his declaration. But even if you could corroborate theoretically what's in the declaration, if the declaration doesn't come into Evidence, I don't see what you have. And if the declaration can only come into Evidence in California under the dying declaration and you don't meet it, even if you could meet the federal residual exception standard, I mean, where does that get you? Well, I don't know that we really need to speculate at this point about what would happen if we were to get a new trial and whether things would be admissible in the state court. I think that for purposes of these proceedings, the issue is whether we've met the requirements of 2244. And, again, I feel that if we were given an evidentiary hearing and we had an opportunity to do discovery, that we would be able to get more information and not just have to rely on Turner's declaration. There's independent corroboration for what Turner is saying. For example, there's the fact that he received a 12-year sentence, even though he has a prior strike and was one of the actual robbers in this case. There's the fact that his sentencing was put over for 15 months after he entered his plea  So I think there are things that we could establish that would corroborate what Turner is saying, even if his declaration were deemed inadmissible. According to Inspector Gardner, he found the poster board in plain view on the floor next to the hole that was used to gain entry into the jewelry store. He claims that numerous crime scene investigators overlooked this important piece of evidence, even though the scene was thoroughly processed on the day of the incident. The crime scene investigators took photographs. They seized relevant items. They actually tested some items at the scene for fingerprints. But, nonetheless, there's no photographs of the poster board that was allegedly right next to the hole. And none of the crime scene investigators see or photograph or seize or record the presence of the poster board in any way. And the poster board isn't logged into evidence until April 9th, two days after the robbery, but immediately after Inspector Gardner and Inspector Layden go to Oakland. Counsel, I don't want to get into your rebuttal time, but could you address the district court's finding that your client did not make any attempts to obtain this supposed exculpatory evidence from Mr. Turner after his trial, even though he was aware that Mr. Turner was supposedly capable of exonerating him, thus Petitioner does not exercise due diligence ER 9? Well, you know, I made this analogy in my brief to the recanting witness. A defendant may know that a witness is giving false testimony against him, but that knowledge alone doesn't start the clock for the exercise of diligence. More is required than just having knowledge that exculpatory evidence exists. There must be a means by which to obtain the exculpatory evidence. So what steps did your client take? I mean, you're saying he didn't take it because he was assuming that he couldn't get it, but what steps did he actually take? Well, he had no reason. He knows that Turner is supposed to be testifying on his behalf at trial, and he knows that Turner fails to appear and testify on his behalf, and he doesn't know why. But he has no reason to believe in the intervening years. So I think the short answer is he didn't do anything. Is that correct? That's correct. But, again, if I can return to my recanting witness analogy, just like a defendant can't force a witness to recant, even if they know the witness gave false testimony, appellant here had no means by which to compel George Turner to come forward with his information. And there's no indication that Turner would have come forward sooner, even had appellant made more attempts to get him to come forward. According to his declaration, he was only coming forward when he did because he was on his deathbed and he wanted to right his moral compass and because he was no longer afraid of retaliation from the San Francisco police. Here, there was no means for my client to subpoena George Turner. There were no pending hearings or anything that he could subpoena him to. And just like the recanting witness, there was no means by which appellant in this case could have forced Turner to come forward, and there was no way for him to know that Turner was willing to come forward. And we don't know that Turner was willing to come forward. His declaration suggests that he was only coming forward when he did because he was on his deathbed and he no longer feared retaliation. Do you want to reserve? Yes, please. Thank you. Thank you, Your Honor. Jeff Lawrence for Appellee. I think the Court has highlighted some of the problems with this case and that the declaration, which is the sole piece of evidence that is being used to try to reopen this case, is inadmissible hearsay. There's no exception in State court. So even if this Court were to find a pathway through the residual exception, there's no way that the Court could then find the State court's rejection of this claim was unreasonable because as a matter of State law, there is no evidence to put forward to show either the — to show the procedural misconduct claim or to bolster the rape claim. So I just have a question. I was slightly confused, but this may be my problem. When I was reading the State court decision, I didn't see anything in there that indicated that the State court judge knew that Mr. Turner had passed away. Was that in the State court record at the time the judge decided that he had died? I'm afraid I don't know the answer to that. Okay. I believe the parties knew. I believe everybody knew he had passed away, but I can't be certain whether that was — I think that was in the briefing that was presented to the Court. Okay. So I'm going to assume the Court was aware of it, but I can't verify that, unfortunately. And one thing I would just note about State court proceedings is that, you know, at the first stage of a State habeas, the Court assumes the facts pled to be true and makes its decision. But once it gets to — and it did not issue an order to show cause in this case. Once it gets to an order to show cause stage, then it would not — that statement would not be admissible under State law. I just have one final point to make, a factual point that I think is worth clarifying. Mr. Smith repeatedly says that no one corroborated Gardner's finding of the poster board. As we demonstrated in the previous State — previous Federal habeas petition, Lieutenant Layden testified at Turner's preliminary hearing. He testified he was standing next to Gardner when Gardner found the poster board on April 7th. He even pointed to a photograph that was taken on April 7th that showed the pieces of tape around the hole that held up the poster board. Those were visible in the photograph. There'd be no need for duct tape around the hole if there was no poster board at that time. He testified to watching Gardner hold it up in front of the hole on the 7th. So there was corroboration of that piece of evidence. He didn't testify at Mr. Smith's trial, but he did testify at the preliminary hearing for George Turner. So that was not an issue. There's one other point, I think, a factual point that I think is worth clarifying. A lot of statements were made in the briefing about whether or not there was a female behind the wall. I would just note that the video evidence of the back alley showed four people leaving the restaurant shortly after the crime, carrying the bags. So even if there was a third person who was a female, there was a fourth person also behind the wall who left right after the robbery who was Mr. Smith. So I think the legal claims are particularly clear in this case, but I'm happy to address them if the Court has any further questions. Any further questions? Okay. Thank you, counsel. Thank you. We'll rebuttal, and we'll give you your full three minutes that you requested. Thank you. So I don't think in the prior proceedings the issue was whether or not Inspector Layden corroborated Inspector Gardner's testimony about the poster board. Inspector Layden did not testify about that at all at the appellant's trial. What Inspector Layden testified to is that Inspector Gardner pointed the newspaper out to him, not the poster board. I don't think it's correct that Layden testified that he was standing right next to Gardner. He just says that Gardner pointed the newspaper out to him. And again, this is a newspaper that we believe was taken from appellant's apartment and placed at the scene just prior to when Inspector Gardner pointed it out to Layden. So when I say that there's no corroboration, no one corroborates what Gardner is saying about finding the poster board on the day of the robbery. No one corroborates that. It's not logged into evidence until two days later after the trip to Oakland. No one corroborates what he's saying about the newspaper. Layden doesn't corroborate it. Layden just says that Inspector Gardner pointed the newspaper out to him. I think the court was asking whether the district court had noted that George Turner had No, the superior court. Oh, I see. Okay, I'm sorry. As to the corroboration, I do want to point out that even if Turner's declaration is not admissible in a future hearing, there's still enough evidence to establish prosecutorial misconduct. And this is corroborated, again, not only by the fact that Turner received a 12-year sentence inexplicably. I mean, normally when a prosecutor offers leniency to a defendant, it's in exchange for something like testifying against someone in the case. Here, he doesn't testify against my client, and he doesn't testify at all, which sort of corroborates that he was given leniency in exchange for not testifying against my client. Significantly, there's no declaration from Jerry Coleman that has been submitted during these proceedings. I believe that Turner's declaration is also corroborated by the fact that there's no dispute that my client was estranged from Dino Smith at the time of this robbery. No witnesses placed my client at the scene. He was never found in possession of any stolen jewelry or any of the proceeds of sale from the jewelry. There's video evidence. Debbie picked him out of a photo array, right? I'm sorry? Debbie Warner picked him out of a photo array? Debbie Warner was not one of the victims. No, I understand that. She didn't identify him as being involved in the robbery. She did know him. No, but you're talking about where his stuff was, how his fingerprints could have got there. Wasn't Debbie Dino's girlfriend? Yes. I don't know what you mean about her identifying my client, though. As somebody who had been hanging around. Yeah, I don't know if that's true. I mean, there's no dispute that my client knew Debbie Warner, but that doesn't place him at the scene or being involved in the robbery. There's video showing a suspect entering the premises with a newspaper, which is consistent with what George Turner is saying. Significantly, there's no video showing any of the suspects entering the scene with a poster board. And, again, that also corroborates what George Turner is saying. Thank you, Counsel. You're a little bit over your time now. Thank you. Thank you both for your arguments. The case just argued to be submitted for decision.
judges: THOMAS, BENNETT, Lasnik